Kara Hartzler for Petitioner Esteban Tiznado-Reyna. This case confronts an issue of first impression left open by the court in Flores-Torres. Namely, what standard do we use to decide whether ICE has jurisdiction to detain a potential U.S. citizen while that citizenship claim is being decided? In this case, the district court held that Mr. Tiznado-Reyna could only be released from detention if he could prove that he was actually a citizen by preponderance of the evidence. This standard was incorrect for three reasons. First, it impermissibly places the burden on United States citizens to prove that they should not be detained rather than having the burden be on the government, which is the general standard in almost every other situation. Second, this standard allows U.S. citizens to be detained for months or years in violation of the Non-Detention Act at 18 U.S.C. 4001A while they're gathering evidence and waiting for their cases to be adjudicated. Third, it violates multiple provisions of the Immigration and Nationality Act that do not allow this standard to be used outside the context of an actual citizenship determination. For these reasons, the district court applied the wrong standard and erred in denying Mr. Tiznado-Reyna's preliminary injunction. Counsel, Judge Gould, if I could just ask you a question to make sure you cover this in your substance of your argument. How do you deal with all of the precedent, and at least I believe there's a lot of it, that would suggest that a habeas Petitioner has the burden of proof on whatever they need to plead to get relief? I think there's two responses to that, Judge Gould, and I think it's an excellent question. First of all, if you're looking at, for instance, an immigration habeas, it's absolutely true that the person bears the initial burden to show that they have, for instance, in a prolonged detention case, been detained for six months or some other period of time, such that there are constitutional questions. In this case, what we're dealing with is a situation where, if the person is a citizen, ICE has no jurisdiction whatsoever to hold them. So we don't have to look to a prolonged period of detention. We just have to look to, is there, for instance, several hours of detention? Is there a day of detention? At several hours or a day of detention is going to be outside of the jurisdictional authority that ICE has. So in that sense, we're still meeting our burden. It's just that we're meeting it in a shorter time frame. But why isn't it your burden or your client's burden to show that he's a U.S. citizen by providence of the evidence? Your Honor, we're not disputing that in an underlying citizenship proceeding the burden is on him. What we're saying is detention is different. It's always been treated differently. And in this case, if you put the burden on him to establish that he is actually a United States citizen, what we're essentially saying is that ICE has the jurisdiction to go out and detain anyone off the street for as long as they want until that person can come up with some sort of evidence showing that they're actually a citizen. And there's just too much case law against us. Another analogy I would make, Judge Gould, to your question is the case of Salerno, a Supreme Court case talking about how, in a criminal proceeding, you have a person who is – has been arrested for a crime and were pretrial, and the government has the burden to show that this person is – cannot be released, that they should be detained. Here, as there, we're looking at the question – well, not necessarily, but there we're looking at the question of did the person commit the crime or not, and the government has the burden. Here, we're looking at is the person a citizen or not, and the government should have the burden, because if we don't put the burden on the government, what we're essentially doing is giving the executive an extreme amount of power to detain anyone that – that could, you know, could be a United States citizen. For instance, in the case that we're dealing with in front of us, we have my client who went eight months without ever even having an evidentiary hearing on the question of whether or not he was a citizen. So if you're saying that ICE has – that the executive has the authority to walk in and detain anyone, and who knows when they're going to actually have their citizenship claim decided, who knows how long it's going to be, that's just a very alarming overreach of executive authority. And because of those reasons, the burden, even though I understand that traditionally a habeas petition, the person has normally – the proponent has normally had the burden. But it's true. Kennedy, I've got a different question that's tied into what you've just said. I mean, your argument sort of on the practical merits I'm sympathetic with. That is to say, if someone really has a bona fide claim to be a citizen, why should that person be subject to a fairly long detention before even a chance to present the argument? I've got that. You, however, are now asking for a preliminary injunction. My first question is, I have never seen a preliminary injunction sought in a habeas case. Do you have any case law? Yes, Your Honor. In fact, I believe that the case that just came out about a month ago that I believe Judge Gould was on, Rodriguez v. Robbins, I believe that that was a preliminary injunction case, unless I'm mistaken. In a habeas case? In a habeas case. So this is – and these are habeas cases then where we've got aliens who are detained and you can get preliminary injunctions? Yes. Absolutely, Your Honor. So they're different from criminal habeas like 2254? Absolutely, Your Honor. Yes. Okay. So assuming then that we've got – that it's permissible, assuming the underlying facts are made for a preliminary injunction, well, assuming that the ultimate question is whether or not you've got – I know you don't want this, but assume for the moment that, in fact, your client has the burden of proof on the habeas proceeding to show by preponderance that he's a citizen. But at the preliminary injunction stage, all he needs show is serious question on the merits and the balance of hardship tipping sharply in his favor. Now, tipping sharply in his favor, I think incarceration is a pretty clear hardship. So it may be at the preliminary injunction stage, even though the ultimate burden of proof is preponderance, all you need show here is serious question on the merits. So if what you're worried about is incarceration pending the ultimate determination, that makes life actually somewhat easier on your client with respect to that period until you get to the determination. What's your response? I would agree with Your Honor, but then I would point to the district court's decision in our case, where the district court held that what we were looking at is, does he have a likelihood of success on the merits? And the district court looked exactly to the question of, is there a likelihood that he can prove that he is actually a United States citizen? And the district court found that, no, he could not meet that burden because he was not trying to prove that he was actually a U.S. citizen. He was just what we were doing is essentially stating that there was a non-frivolous claim to United States citizenship, and the district court held that wasn't enough. But your argument, then, is the district court just made a mistake in terms of whether or not there was a serious question on the merits. We would certainly argue that, Your Honor. But I would still go back to my original point. Yes. I would just say I don't agree with if Judge Fletcher's question implies the position that a non-frivolous claim is equivalent to a serious question on the merits. I would not agree with that subject to more study. And it seems to me that the bar for non-frivolity is a lot lower than a serious claim on the merits. No, Judge Gould, I agree with you on that. A serious question on the merits is not the same as non-frivolous. But isn't that your argument, that you think the district court should have answered the other question, just whether you had a non-frivolous claim? That is our argument, Your Honor. We believe that the proper standard, and I think this is a very confusing question because Flores-Torres talked about jurisdiction, and now we've met the – I believe we've met the jurisdictional threshold. The district court said we had. But now the question is, what's the next standard that you use? And the question – Why should we use the Flores-Torres standard on frivolous? Well, on the merits? Right. Because, Your Honor, the fact is that the stakes are just too high. We're talking about a constitutional deprivation of liberty. And what we're talking about is a situation where potentially 7 percent of the United States population could be detained for who knows how long because they don't have any access to proof of their citizenship. That's just a very alarming overreach of executive authority. That's our general point, Your Honor. Thank you. I will continue for a little bit, and then I'll reserve about two minutes for rebuttal if that's all right with the Court. I would also like to point out that one of the issues that we're dealing with here is that we're not – the proceedings that are going on right now in front of the IJ and in front of the BIA are doing the actual question of does this person, has this person met his burden by a preponderance of the evidence. Assuming that he does meet that burden at some point, what we're going to have is a situation where he was not made a citizen by the BIA or by this court or by the district court. He was a citizen at birth, and therefore, all of this time that he spent in detention over one year at this point has been illegal. Essentially, what we're saying is right now we're guessing about whether or not he's a citizen. And when we're guessing, the constitutional right to liberty is so strong, the burden has to be on the government. We can't guess and we can't put that burden on the individual because there's just too much case law out there in Addington, in Fuchsia, in Cooper, in Salerno, saying that when these issues are at stake, you have to put the burden on the government. Otherwise, there's just too much potential for abuse in these kinds of situations. And I believe I'll reserve the remainder for rebuttal. Thank you. Your Honors, may it please the Court. Hans Chen from the Department of Justice, Office of Immigration and Litigation, representing the Respondents Appellees. The government does not object or – and it concedes that Mr. Cisnato-Reina is entitled to a habeas proceeding. The district court found that to be so and we did not appeal that decision. This is not, therefore, a question of first impression for the Court. As Judge Gould pointed out, there is a lot of precedent when it comes to habeas proceedings brought under 28 U.S.C. 2241. Let me – let me try to clear away what for me is some underbrush. Yes. Do you also concede that in this particular kind of habeas proceeding, a preliminary injunction is a permissible form of relief? We'll concede that if it is so merited under the test for a preliminary injunction. You said we'll concede that and then you mumbled something. We will concede that a preliminary injunction can be granted in habeas proceedings. Okay. Of course. Okay. In light of merits. If the standards for a preliminary injunction are met is what I would have said. That's correct, Your Honor. That is what I said. Thank you for clarifying. Right. And so, Your Honor, it is settled law that the Petitioner here, Mr. Tisdano-Reyna, bears the burden of proof, and that burden of proof is a preponderance of evidence. That's the ultimate burden of proof, but is that – that's not the burden of proof or that's not the necessary showing for a preliminary injunction. What's the necessary showing for a preliminary injunction? Your Honor, thank you for the question. It's a good question. What Mr. Tisdano-Reyna is seeking here is a mandatory preliminary injunction. Well, yes. That is a preliminary injunction. Right, right. But it's a mandatory injunction in which he seeks to alter the status quo, and so he's subject to a higher burden. That is often the case with preliminary injunctions. That's right. And so the facts and the evidence must clearly favor him. As Judge Gold pointed out, the mere fact that he has brought a non-frivolous claim to citizenship, which is all that the Court can say he has done at this point. Well, that's not necessarily so. I'm totally in agreement that merely showing a non-frivolous claim is not enough to get preliminary injunctive relief. But I'm after what I think should be fairly straightforward. Is the standard rule for availability of preliminary injunctive relief the rule that we should apply here for preliminary injunctive relief? Yes, Your Honor. Okay. And that means, then, that if he can show that there are, quote, serious questions on the merits, close quote, and a balance of hardships that tip sharply in his favor, he's entitled to preliminary injunctive relief. Is that right? Correct, Your Honor, although I would note that under this test, there's still a showing of some likelihood of success. Well, if you read Wild Rockies, it says serious question on the merits and balance of hardship tipping sharply in his favor. Right. Which must be, Your Honor, respectfully, balanced with the traditional winter test. I understand. Right. No, I know that case law very well. I'm sure you do, Your Honor. So as to whether preliminary injunction is available under this other test, the Rocky test, as you note, there is a balance of the equities to be considered. And opposing counsel here continuously refers to her client as a U.S. citizen. And, in fact, he has never been found a U.S. citizen. The only determinations that have ever been made is that he is a Mexican citizen and an alien of the United States. And so when we balance the equities, we have an individual in removal proceedings who is a violent felon, who has a history of escape and a history of disciplinary infractions in detention while his removal proceedings continue. In light of those equities, Your Honor, what we have is a balance that does not tip sharply in his favor because he is not, in fact, an adjudicated U.S. citizen at this point. He is far from that. And in light of that fact, Your Honor, the government's interest in continuing to detain him while it pursues his removal is high, and I would submit, Your Honor, higher than his interest in release. Let me focus in a little more, then, on this question of hardships. I understand it's a balance of hardships. It's pretty clear to understand the hardship on him. He's incarcerated. And that, under any measure, is a hardship. So tell me, with a little more elaboration, what's the hardship that we balance on the other side, the hardship on the United States, if he is released pending the full adjudication on habeas? If you consider, Your Honor, the Damore case, the Supreme Court considered what the government's interests were in the mandatory detention of individuals in removal proceedings who have criminal records, and that is a category that includes Mr. Tizana-Reyna. The interests of the government are to hold individuals that Congress has found to be, as a class, likely to abscond and to reoffend. That interest was so high that the Congress authorized and the Supreme Court sustained a categorical ban on release during their removal proceedings. Right. But we now know, if it exceeds six months, that Damore v. Kim really isn't the controlling case. That, Your Honor, is an issue that came up in Rodriguez. Well, we know the law in this circuit. How long it will remain the law is another question. Right. Yes, Your Honor. But the fact is, he has not sought relief under Rodriguez. And if the record is right, I totally agree. Well, Rodriguez just says they get a hearing on Bond, right? Yes, Your Honor. Right. In that hearing, the judge can consider dangerousness and, you know, doesn't have to give to let someone who's dangerous out, necessarily. So I, at least, I don't personally see a conflict between our circuit law and Bond hearings and whatever the Supreme Court has said. I hope they don't tell me I'm wrong in that. I'm not sure the Supreme Court has a right to give a bond hearing. I'm not sure the Supreme Court has a right to give a bond hearing. I've been on a couple of panels that have applied that, that rule relating to bond hearings. But as it relates to this case, he's not he could have asked for a bond hearing, but hasn't, right? That's correct, Your Honor. He has not. And I would say even if he had, and even if he had been granted a bond hearing, assuming he would, it was not granted, which would moot his habeas, of course, that bond hearing would not moot this case, because even if you review Flores-Torres. Did you say it would not moot this case? It would not moot this case, Your Honor. Moot. Thank you. If you, if you take a look at Flores-Torres, that individual was given a bond hearing and the case continued, because what he was seeking was to be released entirely from pre-final order detention, which is what Mr. Tisdan-Arena is seeking here. So, Your Honor, in the Mr. Tisdan-Arena's case, he raises five reasons to depart from the traditional habeas burden of a preponderance of evidence upon him. None of these are valid, and all of them contravene the precedent that Judge Gould has identified and that the government has identified in its briefing. As to the issue that opposing counsel raised earlier to you about the government overreach, that this burden on Mr. Tisdan-Arena would allow the government to lock up, lock him up now and ask questions later. What Mr. Tisdan-Arena ignores is that his detention takes place within a larger substrate of removal proceedings, and that those removal proceedings, as the Rodriguez case points out, is subject to court review. It is an embodiment of due process protection for the respondents. This is not a case where the government is simply locking people up for as long as it wants. This is a case where the government is taking people that it believes are removable aliens, subject to its unreviewable discretion to do so under 1252A, USC 1252G, and as sustained by the Supreme Court in Arab-American, to place individuals in detention and to seek their removability upon the government's showing of their removability by clear and convincing evidence. I'm trying to figure this out, not for the moment with respect to the facts of this case. We can get to those, back to those if we like, but just the standard. Applying then the preliminary injunction standard and coming back to the balancing, it seems to me that if you're trying to figure out the balance of hardships, you do need to do it on an individualized basis. That is to say, it may be that an individual is absolutely no threat to abscond, and if this were a bond hearing, probably he would get out on bond. On the other hand, if there is a real threat of absconding, and we're just talking balance of hardships, I think that there is probably a fair hardship to the government because of the risk of his disappearing or whatever. So as I'm trying to envision how this would work for the preliminary injunction standard, the government looks at or the court looks at the balance of hardships, clear hardship on his side, he's incarcerated, possible hardship on the other side because he may abscond or he may be dangerous or who knows what the individual case is, and then we also look at whether or not there's a serious question on the merits. Is that the proper framework in which to analyze it? I believe so, Your Honor. But I would add that I would dispute the idea that Mr. Tisdano-Reynes gets an individualized determination. What we have from the board is determination. Individualized determination on hardship? Yes. Why? Because he is an alien in removal proceedings. Well, he may or may not be an alien. That's the question. It is the question, Your Honor. But there's no determination that he is anything other than an alien. No, but I'm just trying to talk about balance of hardships. If we're talking balance of hardships, the way we ordinarily do this is we look at the individual circumstances in the case in front of us. You know, cut down this tree, balance the hardships. Okay. What's the tree doing? Is it helping people, hurting people? I mean, why shouldn't there be an individualized determination of balance of hardship in the particular case in front of us? I understand your question, Your Honor. And to the extent that we do an individualized analysis in this case, I think that the fact that he has still some burden to show likelihood of success dooms his preliminary injunction, Your Honor. Okay. Well, that's back to the facts. I'm just trying to figure out the framework. And frankly, as I look at the evidence that he presents of citizenship, it's pretty weak. Yes, Your Honor. I think we can move on from the PI standard. I would concede to what Your Honor just elucidated. I have a question for you, counsel. It may just be idle curiosity, but I'm going to ask it anyway. He has not asked for a bond hearing. Correct. If he did ask for a bond hearing, does the government have a unit position to say what the government's position would be, or is that like a bridge not yet crossed? And I realize that that would not moot this case because he's asking for different relief. So I'm just sort of curious whether the government would oppose his being out on bond. I don't want to commit the government, Your Honor, to a position, particularly because it involves my discussion of Rodriguez, which is still pending before on the merits of the ultimate case before this panel, before this Court. What would the government's position be regarding whether or not he's entitled to the bond hearing? Assuming that Rodriguez were to extend to this individual from the District of Arizona? You can assume whatever you want. I just want to my hypothetical is a person who's been in INS detention for eight months, and he requests a bond hearing. So I'm not asking, as Judge Gould was, about the government's position on the merits. I'm asking about the government's position regarding his entitlement. I mean entitlement, absolutely entitlement, to having the hearing. Barring out the case. But I think under our precedent, he gets under our Ninth Circuit precedent, he'd get the hearing now, unless the Supreme Court stepped in and stopped it, wouldn't he? You guys are appealing that, but it's still out there. My understanding, Your Honor, and I don't want to get too deep into Rodriguez, is that he is not a member of the Rodriguez class, because that class extends to individuals detained in California. Were he a member of that class? Yes, he would get a bond hearing. And based on the facts as set forth in the record, I would dare to predict that he's his bond would be denied. I think this is a textbook case of an individual who poses a flight risk and a history of violence and recidivism. Right. I'm not so concerned. I don't mean to be callous. I'm not so concerned about whether or not the person would actually be released pending detention. I'm concerned about the prospect, because I think opposing counsel has a point, and this is still the United States of America, about how many months a person could be detained before they're brought before the court to have the hearing. And that's what I ask the question. Your Honor, Mr. Tiznano-Reyno brings a claim that he is being detained unlawfully. Yes. He filed his relief, therefore, which is now being considered, is a writ of habeas corpus delivered under 28 U.S.C. 2241. Right, counsel. I was asking you to focus on the bond hearing. So if he hadn't been, and you were good about starting your argument with, in response to Judge Fletcher's questions, by conceding that you don't contest, for purposes of this argument, his entitlement to either to bring the habeas petition or, for that relief. But in the context of the immigration proceeding, this Petitioner hasn't asked for a bond hearing, so it's entirely hypothetical. But that's why I asked the question. In the context of the immigration proceeding, would he be entitled to a bond hearing? I believe that's the subject of the merits of Rodriguez, which remains under consideration by this Court. You've answered my question. Thank you. Your Honor, as I've noted, there's no reason to depart from the traditional habeas standard that applies to a claim of unlawful detention under 28 U.S.C. 2241. It's a preponderance standard. He has not met that. In fact, his likelihood of successful merits is so low that even under the significant question test for preliminary injunction, he does not meet that showing. There's no clear showing of his success. And therefore, the district court's holding that he is not subject to release under preliminary injunction should be upheld. Okay. Thank you very much. You've saved some time. I'd just like to address briefly Judge Fletcher's questions about balance of power and hardship, because I think that's a really important question here. One of the things I'd like to point out is we have never asked that or we have never claimed that Mr. Tisnot Arena should not still be in removal proceedings. There's no such thing as a non-removal act, a non-removal proceedings act, where we say, oh, no, you know, he can't be in removal proceedings. In that sense, I think I differ a little bit from the argument we previously heard. But as a result, all we're asking about here is detention. And so because detention is such an important question here, that's where our focus is. So because we are not asking to somehow cancel removal proceedings, the balance of hardships is much lower on the government, because they will essentially have the same situation as anyone else who, after six months under Rodriguez, can potentially be released on bond. Let me go ahead, please. I didn't mean to interrupt. My question is, why shouldn't your client be required to at least request the bond hearing through the immigration process before he comes here and seeks, particularly with the application of the preliminary injunction standard, you know, a lower bar? Your Honor, first of all, just in case the Court is curious, we didn't ask for a bond hearing because he can't afford a bond. There's no bond he could pay at this point. But we would argue that the bond standard isn't actually applicable in this standard, because what a bond is looking at is, can this person be released without being a flight risk or a danger to society? And that's a question that you do when you're saying that you have jurisdiction in the first place to detain this person. And what we're saying is that under the statute, ICE has no jurisdiction whatsoever to detain this person. So, in fact, the question of whether he poses a danger or a flight risk to society is irrelevant. You know, I just don't agree with that. If we're applying the preliminary injunction standard and we're looking at the balance of hardships, it's very easy to articulate the hardship on him. He's incarcerated. But it seems to me that the hardship on the government would include flight risk, danger to others, so that I think that's got to be a relevant consideration. It may or may not play out exactly the same way it would play out in a bond hearing, but it seems to me that that's a cognizable hardship on the government. Your Honor, I think I want to make sure to distinguish if we're talking about bond hearings versus habeas and balance of hardships, because I think those are two separate distinctions here. I understand that, but I'm trying to figure out. What you're asking for is a preliminary injunction. Correct. And the standard for preliminary injunction is likelihood of success, which under Wild Rockies is serious question on the merits, but if it's only serious question of the merits that are more probable than not of success, you've got to show balance of hardship tipping sharply in his favor. So it seems to me that the government has to be allowed, if we're talking balance of hardships, to talk about the hardship on the government, and if he looks like he's a real flight risk or if he looks like he's a danger to the public, that's a pretty significant hardship on the government. Well, Your Honor, I would still point out that in this situation, he's still going to be in removal proceedings, and if you're a United States citizen and you have a claim for citizenship that's winding its way up through the courts, you have an interest in staying around and seeing how it plays out. It could be argued that he has an interest in running away, too. It certainly could be, but we know he's not trying to go to another country. He wants to prove that he's a United States citizen. Well, but the government's argument, of course, as you know, of course, counsel, is going to be that we won't be able to find him. That's the flight risk here, not that he's going to abscond to another country, but he won't be available. And that's correct, Your Honor. You know, there's certainly issues of flight risk and there's issues of is he a danger to society. If he is a danger to society, he will be punished under the criminal laws like everyone else if he commits another crime. If they catch him. I'm sorry? If they catch him. If they catch him, that's correct. But they've got to catch him and they've got to hope he doesn't hurt somebody. Then where is he right now? I thought he was incarcerated right now. He is incarcerated right now, Your Honor. He's incarcerated in Arizona. So they don't have to catch him. The question is when his term of prison ends, can he just leave or is he under some detainer? He's actually in ICE custody right now, Your Honor. He's not in criminal custody. So he's being held for the remainder of his removal proceedings and then possibly any judicial review afterwards. Now, I have to say I'm a little dense on this, but I want to make sure that to the extent possible, we're all on the same page in terms of the standard to be applied for a preliminary injunction. It is basically the winter standard or the variation of the winter standard that we have under Wild Rockies, and you agree that that's it? We do agree the winter standard applies here. And do you agree that when we're talking about balance of hardships, we can look at hardship to the government? We would agree to the extent, Your Honor, that if you have a case where there, for instance, and Your Honor may disagree about whether this case presents you have to say, I'll cut this a little bit short, you have to agree that we look at hardship to the government because that's what the test says. You might disagree as to what constitutes hardship. That's correct, Your Honor. That's correct. What we would essentially say is if you're looking at hardship, if you're looking at balance of hardship and that sort of thing, the liberty interests here are so compelling that if you have a very strong argument for citizenship, and whether or not there's one here, we can disagree, but if you have a really compelling situation in which a person by all means has put forth a prima facie claim for citizenship, then that really needs to be considered much more seriously and considered to be a much more compelling factor than any kind of balance of hardship to the government. Again, this is just sort of abstract law. At some point, you're pushing against Winter. It could be interpreted that way, Your Honor. Our basic question is the rights here are so fundamental that even if you are going to consider a balance of hardships, any sort of claim to United States citizenship should be considered much more seriously than a balance of hardship to the government. Okay. Thank you, Your Honor. Thank both sides for your arguments. An interesting case. Is it Cane or Holder versus Napolitano is now submitted for decision.
judges: Fletcher, Gould, Christen